IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BML REC, LLC, a Nebraska limited liability company;

Plaintiff,

vs.

YIWU SHENGSEN HANDICRAFT CO., LTD., a foreign corporation;

Defendant.

**8:26CV284**

**MEMORANDUM AND ORDER**

This case comes before the Court on Defendant's motion to dismiss, Filing No. 23;[1] and Plaintiff's motion for preliminary injunction, Filing No. 4. For the reasons set forth herein, the Court denies the motion to dismiss and grants the motion for preliminary injunction.

## I. BACKGROUND

Plaintiff, BML REC, LLC ("BML") is a Nebraska LLC doing business under the tradename BIGMOUTH. Filing No. 1 at 5. It markets and sells novelty products, including the device at issue in this case, the LE TOOTER, a toy which produces a fake flatulence noise. *Id.* at 4. Defendant Yiwu Shengsen Handicraft Co., Ltd. ("Yiwu Shengsen"), is a Chinese company. *Id.* at 5. Yiwu Shengsen has registered the LE TOOTER mark and sells a similar novelty product under that mark. Filing No. 4-2 at 2. Yiwu Shengsen also instituted a trademark-infringement complaint with the online retailer Amazon, claiming BML had infringed its rights to the LE TOOTER mark. *Id.* at 2–3. As a result, Amazon

[1] Defendant filed a duplicative motion to dismiss at Filing No. 24.

deactivated BML's LE TOOTER listing, preventing it from selling its product through Amazon, one of its primary channels of commerce. *Id.* at 3.

BML brought suit against Yiwu Shengsen under the Lanham Act, 15 U.S.C. § 1051 et seq., alleging it was the rightful owner of the LE TOOTER trademark, and Yiwu Shengsen had infringed its rights by marketing a nearly identical product with the LE TOOTER mark. *Id.* at 4–7. BML also alleged Yiwu Shengsen had registered the LE TOOTER mark in violation of BML's rights and had interfered with BML's rightful use of the mark including by triggering enforcement actions against its product listings on Amazon. *Id.* at 11. BML seeks: a declaratory judgment that it is the prior lawful user of the LE TOOTER mark and is entitled to use the mark; cancellation of Yiwu Shengsen's registration of the LE TOOTER mark; and monetary and injunctive relief for Yiwu Shengsen's trademark infringement and unfair competition. *Id.* at 9–15.

BML filed a motion for preliminary injunction. Filing No. 4. It seeks an order enjoining Yiwu Shengsen from submitting or causing the submission of any trademark-infringement complaint to marketplace platforms like Amazon based on its alleged rights to the LE TOOTER mark; asserting trademark-infringement claims against BML; and taking any other action that interferes with BML's ability to market and sell the LE TOOTER product. Filing No. 4-1 at 16–17.

In support of its motion, BML submitted a declaration from the chief executive officer of BigMouth, Inc., Jason Koranda. Filing No. 4-2. Koranda states that BigMouth, Inc., does business under the tradename BIGMOUTH and is a wholly owned subsidiary of BML which is itself a subsidiary of WOW Sports LLC. *Id.* at 2. Koranda later clarified that BigMouth is not in fact a separate legal entity, but is a tradename under which BML does business, with BML wholly owning all of BigMouth's assets. Filing No. 25-1.

Koranda asserts the LE TOOTER mark is owned by SDS Asian, a British Virgin Island entity under common ownership with WOW Sports LLC and BML. *Id.* Effective July 17, 2020, the LE TOOTER trademark, together with its associated goodwill, was assigned to SDS Asia which that same date granted BML an exclusive license to use the LE TOOTER mark in the United States. Filing No. 25-1 at 3.

Koranda states that BigMouth designed and developed the LE TOOTER and first brought it to market in or before 2013. *Id.* BigMouth has thereafter continuously used the LE TOOTER mark in commerce in the United States. *Id.* According to Koranda, the LE TOOTER has been one of Plaintiff's bestselling products, generating over $215,000 in sales since 2017 and over 1400 Amazon customer reviews. *Id.*

In early 2026, Koranda became aware that Yiwu Shengsen had obtained U.S. Trademark Registration No. 6567229 in 2021 for the wordmark "LE TOOTER" and had declared a first-use-in-commerce date of December 2, 2020. *Id.* at 4. On or around April 8, 2026, Amazon notified BML that an enforcement complaint had been filed against it by a "Xie Jingjing" alleging infringement of Yiwu Shengsen's trademark rights. *Id.*

Koranda located Yiwu Shengsen's Amazon product listing and found a product using the LE TOOTER name with nearly identical product packaging, including listing its place of design as Glastonbury, Connecticut, just like BML's product, and listing the same UPC code unique to BML's product. *Id.* at 5; Filing No. 4-4; Filing No. 4-6. Shortly thereafter, Amazon de-listed BML's LE TOOTER product. Filing No. 4-2 at 5. As of the date of the filing of the motion for preliminary injunction, Koranda stated BML had lost sales of approximately 3,000 units. *Id.* Subsequent to the filing of the motion, Yiwu Shengsen withdrew the enforcement action, and it appears BML has been able to resume Amazon sales. Filing No. 23-4. Koranda estimates BML lost approximately $24,000 in

revenue due to the de-listing. Filing No. 4-2 at 8. Additionally, Koranda states that deactivation from the Amazon platform has had other negative effects, including BML losing its established Amazon seller metrics such as its location in search results, damaging customer relationships, and impacting marketplace standing. *Id.* at 6.

Yiwu Shengsen has moved to dismiss, arguing a lack of personal jurisdiction and insufficient service of process.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss for Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2)

To successfully survive a motion to dismiss challenging personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A*, 648 F.3d 588, 591 (8th Cir. 2011)). "A plaintiff's prima facie showing 'must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion.'" *Id.* (quoting *K–V Pharm.*, 648 F.3d at 592). "Where no hearing is held on the motion, [the Court] must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Id.* (citing *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)).

### B. Motion to Dismiss for Insufficient Service of Process Under Fed. R. Civ. P. 12(b)(5)

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of actions for "insufficiency of service of process." Fed. R. Civ. P. 12(b)(5). "A Rule 12(b)(5) motion is

the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." *Holmes v. Nebraska*, No. 8:21CV158, 2021 WL 4710343, at *5 (D. Neb. Oct. 8, 2021) (citing 5B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1353 (3d ed.)).

**C. Preliminary Injunction**

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctive relief. In deciding whether to issue a preliminary injunction, the Court considers: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Consequently, a court must be "mindful that a movant carries a 'heavier' burden when granting a preliminary injunction has the effect of awarding the movant substantially the relief it could obtain after a trial on the merits." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) (*see Calvin Klein Cosms. Corp. v. Lenox Lab'ys, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)). "An evidentiary hearing is required prior to issuing a preliminary injunction only when a material factual controversy exists." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002) (citing *Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d 427, 432 (8th Cir. 1983)).

## III. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2)

Yiwu Shengsen moves to dismiss for lack of personal jurisdiction because it argues it is not subject to general jurisdiction in Nebraska since it is not a Nebraska corporation. It also argues the Amazon trademark infringement complaint was not sufficiently directed at Nebraska such as to establish personal jurisdiction over it.

Federal Rule of Civil Procedure 4(k)(2) provides, "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

Here, BML's claims come under the Lanham Act, a federal statute, meaning they "arise[] under federal law" for purposes of Rule 4(k)(2). *See* 15 U.S.C. § 1051 et seq. Furthermore, there is no evidence Yiwu Shengsen is subject to jurisdiction in any state's courts of general jurisdiction; it denies that Nebraska has jurisdiction and declines to name any other state which would have jurisdiction. *See Fraserside IP L.L.C. v. Netvertising Ltd.*, 902 F. Supp. 2d 1165, 1179 (N.D. Iowa 2012) ("A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais L.L.P.*, 256 F.3d 548, 552 (7th Cir. 2001)). Therefore, it is not "subject to jurisdiction in any state's courts of general jurisdiction" within the meaning of Rule 4(k)(2) as well.

Lastly, exercising jurisdiction is consistent with the Constitution and laws. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal

jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Blue Zones, LLC v. Hartley*, No. 17-CV-5097 (PJS/LIB), 2018 WL 4759835, at *5 (D. Minn. Oct. 2, 2018) (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017)); *accord In re Federal Fountain, Inc.*, 165 F.3d 600 (8th Cir. 1999). "The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). "The fundamental inquiry is whether the defendant has 'purposefully availed' itself of the 'benefits and protections' of the forum state, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985), to such a degree that it 'should reasonably anticipate being haled into court there,' *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)." *Id.*

Here, Yiwu Shengsen has sufficient minimum contacts with the nation as a whole to satisfy due process: it has advertised its products on Amazon, a United States website, and has shipped its products into the country to numerous purchasers. It should come as no surprise to Yiwu Shengsen that it could be haled into an American court based on its sale of products into the country. *Accord World-Wide Volkswagen*, 444 U.S. at 297 ("Hence if the sale of a product of a manufacturer or distributor . . . arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in [the jurisdiction], it is not unreasonable to subject it to suit in [the jurisdiction] . . ..").

Accordingly, if BML has properly "serv[ed] a summons," Fed. R. Civ. P. 4(k)(2), the Court finds personal jurisdiction has been established. The Court therefore turns to the question of service, which Yiwu Shengsen also contests.

**B. Motion to Dismiss for Insufficient Service of Process Under Fed. R. Civ. P. 12(b)(5)**

Yiwu Shengsen also argues dismissal is required because alternate service by email to its counsel in the parallel trademark proceeding was improper.

The Magistrate Judge allowed BML to serve Yiwu Shengsen by alternate service. Filing No. 10. As she thoroughly explained, Rule 4(f) governs the service of defendants who are not located "within any judicial district of the United States," and it authorizes three methods of service on non-governmental entities located abroad:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . or;
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). "Finally, assuming the proposed alternative method of service does not conflict with federal law or international agreement, the Court may exercise its discretion to permit such service so long as it comports with constitutional due process." *Glob. Air Charters Inc. v. Mayfair Jets DWC-LLC*, 2024 WL 5039907, at *1 (D. Minn. Dec. 9, 2024) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).

Magistrate Judge DeLuca concluded alternate service was proper because BML had been unable to locate a definitive physical address for Yiwu Shengsen; the only

address available according to the USPTO's Trademark Status & Document Retrieval record for its registration corresponded to an unrelated jewelry store. Furthermore, the Magistrate Judge agreed that service by email to Yiwu Shengsen's counsel in the TTAB proceedings was reasonably calculated to reach Yiwu Shengsen and provide it actual notice because the proceeding was ongoing, so it was known the email address was current. Filing No. 10 at 4.

Yiwu Shengsen argues its address was not unknown because it was provided in its Amazon listing although it admits it is also the address for another entity (presumably the jewelry store). It further argues that email service to China is not permitted under the Hague Convention. Filing No. 23 at 7–8. BML argues that Yiwu Shengsen should not be permitted to contest service because it did not timely object to the Magistrate Judge's order. Filing No. 25 at 4.

In general, where a magistrate judge has been designated to determine a pretrial matter, the Court may reconsider it only upon a timely objection and where the magistrate judge's order is "clearly erroneous or contrary to law." 28 U.S.C. §636(b)(1)(A). As a practical matter, however, a timely objection to the Magistrate Judge's alternate-service order would have been impossible as Yiwu Shengsen was, by the nature of the issue itself, not yet a party to the case. However, ultimately the Court need not decide whether it determines the service issue de novo, reviews it only for clear error, or must reject it as an untimely objection because its conclusion is the same regardless: alternate service was proper here and Yiwu Shengsen's arguments regarding service must be rejected.

Yiwu Shengsen's later-proffered evidence of sharing its address with the unrelated jewelry store has no bearing on the reasonableness of alternate service based on BML's diligent attempt to locate it at the time of the Magistrate Judge's order. Furthermore, this

Court agrees with those courts in this Circuit that have found email service does not contravene the Hague Convention. "China has objected to service by mail under Article 10 of the Hague Convention. Ample authority holds that an objection to service by postal channels under Article 10 does not foreclose service by email as an alternative method of service under Rule 4(f)(3)." Filing No. 10 at 4 (quoting *Missouri ex rel. Schmitt v. People's Republic of China*, 2021 WL 1889857, at *2 (E.D. Mo. May 11, 2021) (collecting cases)).

Accordingly, Yiwu Shengsen was properly served, and this Court has personal jurisdiction over it.

**C. Preliminary Injunction**

The Court next considers the merits of BML's request for a preliminary injunction. It seeks an injunction prohibiting Yiwu Shengsen from submitting or causing the submission of any trademark-infringement complaint to marketplace platforms like Amazon based on its alleged rights to the LE TOOTER mark; asserting trademark-infringement claims against BML; and taking any other action that interferes with BML's ability to market and sell the LE TOOTER product.

*1. Likelihood of Success on the Merits*

The Court starts with the "most important" factor—Plaintiff's likelihood of success on the merits." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). In this posture, Plaintiff "must show that it has at least a 'fair chance of prevailing.'" *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1014 (8th Cir. 2021) (quoting *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013)). BML has met that burden here.

BML's complaint centers around its claim of ownership and priority of the LE TOOTER mark arising under the Lanham Act, 15 U.S.C. § 1051 et seq. *See* Filing No. 1

(asserting claims for declaratory judgment of trademark priority and ownership, declaratory relief for cancellation of Yiwu Shengsen's infringing mark, and trademark infringement). "The Lanham Act federalized trademark law, but it did not displace the common-law foundation of trademark rights, nor did it disturb how the rights originate." *Boyd v. Deadwood Tobacco Co.*, 178 F.4th 1132, 1144 (8th Cir. 2026). "Under the common law, trademark rights arise out of use, not 'mere adoption.'" *Id.* at 1143 (quoting *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)). "A mark must be 'use[d] . . . in commerce' before it can be registered, and registration 'is not mandatory' because owners of unregistered marks may still enforce their rights under both the Lanham Act and the common law." *Id.* at 1144 (quoting *Vidal v. Elster*, 602 U.S. 286, 291 (2024)). "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "The registration of a mark that does not meet the use [in commerce] requirement is void ab initio." *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1381 (Fed. Cir. 2015) (citation omitted) (alteration in original). "Relatedly, a trademark cannot be assigned except in tandem with the transfer of the underlying business and goodwill with which it is associated." *Boyd*, 178 F.4th at 1145 (citing *Bulte v. Igleheart Bros.*, 137 F. 492, 499 (7th Cir. 1905)).

BML has demonstrated a likelihood of success in establishing that it had priority and ownership of the LE TOOTER mark and Yiwu Shengsen's registration should therefore be canceled. It has produced evidence that BigMouth, BML's tradename, designed and developed the LE TOOTER product and mark, first brought it to market in or before 2013, and has thereafter continuously used the LE TOOTER mark in commerce in the United States. It produced evidence of its advertising, sales revenue, and Amazon

reviews to substantiate its claim of use in commerce from the 2013 date. It also established ownership of the mark by means of the evidence that, effective July 17, 2020, the LE TOOTER trademark, together with its associated goodwill and business, was assigned to SDS Asia which that same date granted BML an exclusive license to use the LE TOOTER mark in the United States.

Yiwu Shengsen registered the LE TOOTER mark and declared a first-use-in-commerce date of December 2, 2020. However, the evidence has shown a likelihood of success in demonstrating the registration was void ab initio due to Yiwu Shengsen's failure to meet the use-in-commerce requirement; BML's use of the mark predates Yiwu Shengsen's registration by nearly seven years.

Yiwu Shengsen argues that BML's common-law priority must be limited to markets it actually penetrated and it has failed to show what areas or regions of the country its sales reached. This inverts the test for territorial limitation. The *Tea Rose/Rectanus* doctrine provides that "the first user of a common law trademark may not oust a later user's good faith use of an infringing mark *in a market where the first user's products or services are not sold*." *Nat'l Ass'n for Healthcare Commc'ns, Inc. v. Cent. Ark. Area Agency on Aging, Inc.*, 257 F.3d 732, 735 (8th Cir. 2001) (emphasis added) (citing *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 100–01 (1918)). Here, however, there is no regional "market where [BML]'s products . . . are not sold" but Yiwu Shengsen's products are. *Id.* Rather, both BML and Yiwu Shengsen engage in a nationwide online market via the Amazon platform, rendering the *Tea Rose/Rectanus* doctrine inapplicable. Contrary to Yiwu Shengsen's contention, BML is not required to establish that it sold its product in every state or region. As the evidence shows that Yiwu Shengsen and BML sold to the same market, the market-penetration argument is without merit.

Yiwu Shengsen also argues that unresolved issues regarding a possible laches or abandonment defense defeat the request for injunctive relief. In particular, it claims BML's failure to sue until 2026 despite Yiwu Shengsen registering the mark in 2021 precludes the relief it seeks. Any such claim is speculative at this stage as there is no evidence to substantiate an improper motive underlying the delay in filing. *See, e.g.*, *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 186 F. Supp. 3d 977, 985 (D. Neb. 2016) ("To prevail on a defense of laches, a defendant must establish that (1) the plaintiff's delay in filing a suit was 'unreasonable and inexcusable;' and (2) the defendant suffered 'material prejudice attributable to the delay.'" (citations omitted)). Under the current procedural posture of the case, BML has adequately demonstrated a likelihood of success on the merits of its claims asserted in its complaint. If Yiwu Shengsen comes into possession of evidence to substantiate an affirmative defense at a later date, it may then assert the same.

2. *Irreparable Harm*

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The Eighth Circuit has recognized that the "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) (citation omitted). The harm must be "likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citations omitted).

BML has provided evidence that in addition to its monetary losses of $24,000 in lost sales, it also suffered intangible damage to its Amazon seller metrics and search

result priority, damage to its customer relationships, and negative impact on its marketplace standing. Yiwu Shengsen argues that because it has voluntarily withdrawn the Amazon complaint, there is no risk of future harm. But absent the injunctive relief BML seeks, there is nothing preventing Yiwu Shengsen from commencing another enforcement action and inflicting further monetary and intangible damage on BML. Accordingly, this factor slightly favors issuance of injunctive relief.

*3. Balance of Harms*

As set forth above, the harm to BML in the absence of injunctive relief is the risk of another Amazon de-listing which would carry both monetary and reputational harm. By contrast, the harm to Yiwu Shengsen if the injunction is issued is minimal. The requested relief would only prevent Yiwu Shengsen from filing further trademark-infringement actions against BML; it would not prevent Yiwu Shengsen from selling its own product. Accordingly, this factor favors issuance of the injunction.

*4. Public Interest*

Lastly, the public interest also favors issuance of the injunction. Congressional passage of the Lanham Act demonstrates support for trademark protection as "[i]nfringement and dilution of trademarks are inherently contrary to the public interest." *Am. Dairy Queen Corp. v. New Line Prods., Inc.*, 35 F. Supp. 2d 727, 733 (D. Minn. 1998).

*5. Bond*

Federal Rule of Civil Procedure 65 requires the movant to give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court concludes a $1.00 bond is adequate as, explained above, the scope of the injunction is narrow and limited in its economic impact on Yiwu Shengsen. Additionally,

the defendant's chameleon-like approach to doing business makes it unlikely the plaintiff will be able to execute a successful domestic judgment.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds Yiwu Shengsen's motion to dismiss should be denied and BML's motion for preliminary injunction should be granted.

IT IS ORDERED:

1. Defendant's Motions to Dismiss (Filing No. 23; Filing No. 24) are denied.
2. Plaintiff's Motion for Preliminary Injunction, Filing No. 4, is granted.
3. Until final judgment or further order of the Court, Defendant is enjoined from:
    a. submitting, or causing the submission of any trademark-infringement complaint to marketplace platforms like Amazon based on its alleged rights to the LE TOOTER mark;
    b. asserting trademark-infringement claims against Plaintiff; and
    c. taking any other action that interferes with BML's ability to market and sell the LE TOOTER product.
4. Pursuant to Rule 65(c), Plaintiff is required to post a bond or surety in the amount of $1.00.

Dated this 28th day of October, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge